## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CRYSTAL JACKSON, ERIKA MORENO,
and LISA TUCKER-PRINCE,

      Plaintiffs,

-v-

ASCENSION PROVIDENCE HOSPITAL,
A Domestic Nonprofit Corporation,

      Defendants,

Case No.
Hon.
Mag.

_____

Charlotte Croson (P56589)
Adam Taub (P78334)
Croson Taub & Michaels PLLC
455 E. Eisenhower Pkwy, Ste 75
Ann Arbor, MI 48108-3335
(734) 519-0872
ccroson@ctmlawyers.com
ataub@ctmlawyers.com
Attorneys for Plaintiffs

_____

## COMPLAINT AND JURY DEMAND

Plaintiffs Crystal Jackson, Erika Moreno, and Lisa Tucker-Prince by and through their attorneys Croson Taub & Michaels PLLC bring the following causes of action against Defendant Ascension Providence Hospital, and allege the following:

### JURISDICTION, PARTIES, AND VENUE

1.    Plaintiff Crystal Jackson is an individual who resides in Wayne County,

1

Michigan, within the Eastern District of Michigan.

2.      Plaintiff Erika Moreno is an individual who resides in Oakland Michigan, within the Eastern District of Michigan.

3.      Plaintiff Lisa Tucker-Prince is an individual who resides in Oakland County Michigan, within the Eastern District of Michigan.

4.      Defendant Ascension Providence Hospital is a domestic nonprofit corporation that regularly conducts business in Oakland County Michigan, within the Eastern District of Michigan.

5.      At all relevant times, Plaintiffs were and are employed at Defendant's facility located in the City of Novi, Oakland County, Michigan, located within the Eastern District of Michigan.

6.      Jurisdiction is proper in this Court under 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. § 1331, and 28 U.S.C. § 1343(a)(4).

7.      Jurisdiction over supplemental state law claims is proper under 28 U.S.C. § 1367, as they arise from the same case and controversy. They do not substantially predominate. And they do not raise novel or complex issues.

8.      Venue is proper in this Court under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391 as this is the judicial district in which the unlawful employment practices occurred and the relevant employment records are kept.

9.      Plaintiff Tucker-Prince filed charges of race discrimination and hostile

environment harassment against Defendant with the Detroit Field Office of the Equal Employment Opportunity Commission (EEOC) in August 2023. The EEOC issued a Right to Sue to Ms. Tucker-Prince on or about October 23, 2023.[1]

## STATEMENT OF FACTS

10.     Plaintiffs herein reincorporate their allegations in the paragraphs above.

11.     At all relevant times, Plaintiffs were, and are, employees of Defendant as defined in the relevant statutes.

12.     Plaintiffs work or worked in the Labor/Delivery unit at Defendant's Novi Michigan location.

13.     Ms. Jackson, who is an African-American woman, began her employment with Defendant in or around 1999. Ms. Jackson is currently employed by Defendant as a Surgical Technician.

14.     Ms. Moreno, who is an African-American woman, began her employment with Defendant in or about 2017 as a Patient Care Technician.

15.     Ms. Tucker-Prince, who is an African-American woman, began her employment with Defendant in or about 2005. Ms. Tucker-Prince is currently employed by Defendant as the Unit Secretary.

16.     Plaintiffs have witnessed and been subject to racial discrimination and

---

[1] Plaintiffs Jackson and Moreno anticipate amending their complaint to add Title VII claims upon receipt of their right to sue notices from the EEOC.

a racially hostile environment over a lengthy period of time.

17.     In approximately 2018, Ms. Jackson and other Ascension employees filed an EEOC charge against Defendant, then known as Providence Park Hospital, alleging race discrimination, a racially hostile environment, and retaliation by Defendant.

18.     Ms. Jackson complained, *inter alia*, that African American staff and patients were referred to in a racially derogatory manner and that staff were given disparate work assignments.

19.     As a result, Defendant entered into a consent agreement with the EEOC that required Defendant to, among other things, provide training and remediation for racial harassment and discrimination, including holding individuals responsible for their acts of racial harassment and discrimination. However, Defendant has not remediated the race discrimination and racially hostile environment at Ascension Providence Novi.

20.     In December 2022, two Caucasian nurses created a racist display in the common lunchroom at Ascencion Novi. That display included the term "Fo Shizzle My Nizzle" commonly known to mean "For sure my nigga".

21.     The use of the phrase was, and could reasonably be interpreted to be, highly offensive and hostile to African American employees. One of the Caucasian employees responsible for the display stated that she had had second thoughts about

4

setting up the display but did it anyway.

22.　　The display consisted of a Snoop Dogg doll and a Barbie doll (Caucasian) who was ostensibly giving birth to Snoop Dogg's child in a bedpan. The Caucasian perpetrators placed the Barbie doll on a piece of Kente cloth, commonly associated with African American culture.

23.　　One or more Plaintiffs reported the display to Defendant, yet Defendant took no action to address the racial hostility of, and hostile environment created by, the display.

24.　　The only action taken by Defendant was a non-mandatory diversity meeting which the perpetrators did not attend. In that meeting HR simply told all attendees that they had to "get along with each other". When a Supervisor was asked the purpose of the meeting, she said she could not tell them.

25.　　The day after the non-mandatory meeting, a Caucasian nurse said directly to Ms. Jackson "Fo Shizzle my Nizzle" when passing her in the hallway.

26.　　This nurse's conduct was of a piece with the allegation in Ms. Jackson's prior EEOC charge that Caucasian employees asked offensive questions like "What's up my niggas?" to African American employees. In fact, this specific nurse had been reported in 2018 and before for her prior acts of racial harassment.

27.　　Ms. Jackson reported this renewed racial harassment, but again, Defendant took no remedial action.

5

28.     Both Ms. Tucker-Prince and Ms. Moreno actively sought to advance their careers at Ascension.

29.     Ms. Tucker-Prince has consistently sought a position as a Surgical Technician and requested cross training.

30.     Ms. Moreno sought to advance to the position of Scrub Nurse and also requested cross training.

31.     Defendant is often short on Scrub Nurses in the Labor/Delivery unit.

32.     Ms. Tucker-Prince and Ms. Moreno have been passed over for open positions for which Caucasian employees have been cross trained and hired into.

33.     In or about May 2023, Ms. Moreno was, again, denied training and promotion to Scrub Nurse. Instead, a Caucasian employee was trained and promoted into the open position.

34.     When Ms. Moreno inquired about being promoted to scrub nurse, she was informed that, unlike Caucasian employees, she would have to leave her employment with Defendant, get trained elsewhere, and then re-apply to Defendant.

35.     Accordingly, Ms. Moreno concluded that, unlike Caucasian employees, she would not be promoted while employed by Defendant and was constructively discharged in or about May 2023.

36.      In the summer of 2023, Ms. Tucker-Prince was passed over for an open Surgical Tech position which was, instead, given to a Caucasian employee.

Defendant never posted the position or otherwise made Ms. Tucker-Prince aware of the opening despite her expressed interest in promotion to Surgical Tech.

37.     Defendant has a history of African American employees being passed over for Surgical Tech positions in favor of Caucasian employees which it has not remediated.

38.     Defendant has not effectively remediated the racially hostile environment, harassment, and discrimination reported in 2018 and which has continued since.

39.     Subsequent to Ms. Jackson's 2018 EEOC Charge and the consent agreement, in addition to the previously pled allegations:

    a.  Caucasian employees have made comments about African American employees' skin color.

    b.  Caucasian nurses differentially enforce visitor rules for the Labor/Delivery unit depending upon the race of the patient and her family.

    c.  A Caucasian employee called security to have African American family members (who were following visitation rules) removed from the unit. This same employee allows Caucasian visitors free rein to violate the visitor rules.

    d.  A Caucasian employee yells and curses at co-workers in the presence of patients and visitors and is never disciplined. In contrast, African American employees, accused of similar conduct, have been disciplined.

    e.  A Caucasian nurse declared that COVID was a "black people's disease".

    f.  The same nurse, when African American patients were admitted, told

7

an African American nurse "it's one of YOUR Southfield patients".

g. African American employees complained about this conduct, but no action was taken. In fact, this Caucasian nurse was recently promoted to Unit Manager.

h. One or more Plaintiffs have witnessed Caucasian nurses targeting African American doctors, residents, and interns with false accusations of poor performance, belittling statements, disrespect, and other racially motivated harassment that they do not direct at similarly-situated Caucasian employees.

i. Upon information and belief, Defendant relocated all of its residents to the Southfield location rather than remediate racial discrimination and the racially hostile environment.

j. Upon information and belief, Defendant terminated an African American doctor after she complained of the racially hostile environment.

k. Upon information and belief, employees of Defendant have admitted "we have a big discrimination problem in this unit".

40. Defendant has failed and refused to effectively remediate past and ongoing racial discrimination, harassment, and a racially hostile environment which it is was aware of at least as early as 2018 and subsequently through additional complaints of harassment and discrimination by Plaintiffs and other African American employees.

## COUNT I
### RACE DISCRIMINATION AND HOSTILE ENVIRONMENT RACIAL HARASSMENT IN VIOLATION OF TITLE VII 42 U.S.C § 2000e-2(a)(1)
### (for Plaintiff Lisa Tucker-Prince)

41. Plaintiffs herein reincorporate their allegations in the paragraphs above.

42. At all relevant times, Plaintiff Lisa Tucker-Prince was an

employee, and Defendant was her employer under the definitions contained in Title VII, 42 U.S.C. § 2000e(b) and (f).

43. At all relevant times, Defendant employed 15 or more employees and is thus subject to the requirements of Title VII.

44. Plaintiff is a member of a protected group based on her race.

45. Defendant unlawfully discriminated against Plaintiff because of her race.

46. Plaintiff was subjected to adverse employment actions, including, but not limited to, failure to promote/transfer and a racially hostile work environment, by Defendant because of her race.

47. Defendant, by and through its agents, servants and/or employees violated Title VII by the acts, including, but not limited to:

a. Discriminating against Plaintiff with respect to her employment, compensation, or a term, condition or privilege of employment, because of race;

b. Limiting, segregating, or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff because of race;

c. Segregating, classifying or otherwise discriminating against Plaintiff on the basis of race with respect to a term, condition or privilege of employment, including a benefit plan or system;

d. Creating a hostile work environment on the basis of Plaintiff's race; and/or

e. Failing to provide a work environment free from race

discrimination.

48.     Defendant's actions in violation of Title VII were willful.

49.     Defendant's actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

50.     Plaintiff's race was the motivating and/or but for cause of Defendant's actions in violation of Title VII.

51.     As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

52.     As a further direct and proximate result of Defendant's violation of Title VII, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT II
### RACE DISCRIMINATION AND HOSTILE ENVIRONMENT RACIAL HARASSMENT IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2202 (for all Plaintiffs)

53.     Plaintiffs herein reincorporate their allegations in the paragraphs above.

54.     At all relevant times, Plaintiffs were employees, and Defendant was their employer under the definitions contained in ELCRA, MCL 37.2201(a).

10

55.    At all relevant times, Defendant employed 1 or more employees and is thus subject to the requirements of ELCRA.

56.    Plaintiffs are members of a protected group based on their race.

57.    Defendant unlawfully discriminated against Plaintiffs because of their race.

58.    Plaintiffs were subjected to adverse employment actions, including, but not limited to, failure to promote/transfer, a racially hostile work environment, and/or discharge by Defendant because of their race.

59.    Defendant, by and through its agents, servants and/or employees violated Title VII by the acts, including, but not limited to:

a.    Discriminating against Plaintiff with respect to her employment, compensation, or a term, condition or privilege of employment, because of race;

b.    Limiting, segregating, or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff because of race;

c.    Segregating, classifying or otherwise discriminating against Plaintiff on the basis of race with respect to a term, condition or privilege of employment, including a benefit plan or system;

d.    Creating a hostile work environment on the basis of Plaintiff's race; and/or

e.    Failing to provide a work environment free from race discrimination.

60.    Defendant's actions in violation of ELCRA were willful.

61.     Plaintiffs' race was the motivating and/or but for cause of Defendant's actions in violation of ELCRA.

62.     As a direct and proximate result of Defendant's violation of ELCRA, Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

63.     As a further direct and proximate result of Defendant's violation of ELCRA, Plaintiffs have been placed in financial distress and have suffered a loss of earnings and benefits, and a loss of and impairment of their earning capacity and ability to work, and will so suffer in the future; they have been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT III
### RACE DISCRIMINATION IN CONTRACTING IN VIOLATION OF 42 U.S.C. § 1981
### (FOR ALL PLAINTIFFS)

64.     Plaintiffs herein reincorporate their allegations in the paragraphs above.

65.     Plaintiffs are members of a protected group based on their race.

66.     By the conduct described in this complaint, Defendant intentionally deprived Plaintiffs, who are African American, of the same rights as are enjoyed by Caucasian citizens to the creation, performance, enjoyment, and all benefits and privileges, of their contractual relations with Defendant, in violation of 42 U.S.C. § 1981.

67.     Defendant's actions in violation of § 1981 were willful.

68.     Plaintiffs' race was the motivating and/or but for cause of Defendant's actions in violation of § 1981.

69.     Defendant's course of conduct was done with reckless disregard of Plaintiffs' federally protected civil rights, entitling Plaintiffs to unlimited punitive damages.

70.     As a direct and proximate result of Defendant's violation of § 1981, Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

71.     As a further direct and proximate result of Defendant's violation of § 1981, Plaintiffs have been placed in financial distress and have suffered a loss of earnings and benefits, and a loss of and impairment of their earning capacity and ability to work, and will so suffer in the future; they have been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

a.      Lost wages and benefits, past and future, in an amount to be proved at trial;

b.      Compensatory damages in an amount to be proved at trial, including compensation for the emotional and physical toll of the abusive treatment Plaintiffs faced during their employment with Defendant;

c.     Exemplary damages;

d.     Punitive damages;

e.     An award of interest, costs, and reasonable attorney fees;

f.     Injunctive relief requiring Defendant to take effective steps to prevent ongoing discrimination and harassment of employees; fully investigate and appropriately respond to all conduct that may constitute discrimination and harassment; and mitigate the effects of discrimination and harassment by eliminating any hostile environment that may impact any employees who make claim as victims;

g.     Whatever other equitable relief this Court finds appropriate; and

h.     Such other and further relief as the Court deems just and proper.

Respectfully Submitted,

CROSON, TAUB, & MICHAELS, PLLC

/s/Adam M. Taub_____
Charlotte Croson (P56589)
Adam Taub (P78334)
Croson Taub & Michaels PLLC
455 E. Eisenhower Pkwy, Ste 75
Ann Arbor, MI 48108-3335
(734) 519-0872
ccroson@ctmlawyers.com
ataub@ctmlawyers.com
Attorneys for Plaintiffs

Dated: January 18, 2024

## DEMAND FOR TRIAL BY JURY

Plaintiffs, by and their counsel, hereby demand a trial by jury as to all those issues so triable as of right.

14

Respectfully Submitted,

CROSON, TAUB, & MICHAELS, PLLC

/s/Adam M. Taub_____
Charlotte Croson (P56589)
Adam Taub (P78334)
Croson Taub & Michaels PLLC
455 E. Eisenhower Pkwy, Ste 75
Ann Arbor, MI 48108-3335
(734) 519-0872
ccroson@ctmlawyers.com
ataub@ctmlawyers.com
Attorneys for Plaintiffs

Dated: January 18, 2024